**NOTICE:**

Please be advised that this corrected proof of claim is made in connection with the redaction of certain confidential personal information in a proof of claim previously filed in your bankruptcy case by the creditor identified herein. This corrected proof of claim is otherwise identical to the original proof of claim in all respects. The substance of the proof of claim, including the claim amount, security (if any) and priority (if any), has not been changed in any way.

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT DISTRICT OF UTAH | | **PROOF OF CLAIM** |
|---|---|---|
| Name of Debtor:<br>Hossein Rezaian and Afagh Mohammadreza | Case Number:<br>12-31819 RKM | |

| NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. §503. | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>JPMorgan Chase Bank, N.A. | **COURT USE ONLY** |
| Name and Address where Notices should be sent:<br><br>JPMorgan Chase Bank, N.A.<br>c/o Chase Records Center<br>Attn: Correspondence Mail<br>700 Kansas Lane<br>Monroe, LA 71203<br><br>Telephone number:   (866) 520-6447            email: | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>   (*if known*)<br><br>Filed on: _____ |
| Name and Address where payment should be sent (if different from above):<br><br>JPMorgan Chase Bank, N.A.<br>National Payment Services<br>P.O. Box 24785<br>Columbus, OH 43224-0785<br><br>Telephone number:   (866) 520-6447            email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**        $78,381.19

If all or part of your claim is secured, complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim.  Attach itemized statement of interest or charges.

**2. Basis for Claim:** Mortgage/Note
(See instruction #2)

| **3.** Last four digits of any number by which creditor identifies debtor:<br>1551 | **3a.** Debtor may have scheduled account as:<br><br>(See instruction #3a) | **3b.** Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

| **4. Secured Claim:** (See instruction #4)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>**Nature of property or right of setoff:**   ☑ Real Estate   ☐ Motor Vehicle   ☐ Other<br><br>**Describe:** 14029 Candy Pull Drive, Draper, UT  84020<br><br>**Value of Property:** _____<br><br>**Adjustable Rate Note, Present Interest Rate** 3.91%   ☐ Fixed  ☑ Variable<br>**(when case was filed)** | Amount of arrearage and other charges, as of the time case filed, included in secured claim, if any:<br>$ .00<br><br>**Basis for perfection:**  Deed of Trust<br><br>**Amount of Secured Claim:** $78,381.19<br><br>**Amount Unsecured:** $ _____ |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).**  If any part of the claim falls in one of the following categories, check the box specifying the priority and state the amount.

| ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $11,725*) earned not more than 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507(a)(4) | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5) | **Amount entitled to priority:**<br><br>$ _____ |
|---|---|---|---|
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(7) | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507(a)(8) | ☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a)(__). | |

\* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits:**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

Filed: December 24th, 2012

| | |
|---|---|
| **7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #7 and definition of "redacted".*) | |
| DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. | |
| If the documents are not available, please explain: | |

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach a copy of power of attorney, if any)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004)   ☐ I am a guarantor, surety, endorser, or other co-debtor. (See Bankruptcy Rule 3005).

I declare under penalty that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Mark S. Middlemas
Title: Attorney for Creditor
Company: Lundberg & Associates
Address and telephone number (if different from notice address above):
   3269 South Main Street, Suite 100
   Salt Lake City, Utah 84115
Telephone number: (801) 263-3400
email: ECFmailDistGroup@Lundbergfirm.com

/s/Mark S. Middlemas          December 24, 2012
(Signature)                             (Date)

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payments in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of the lien documentation, and state , as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any secured interest. You may also attach a summary in addition to the documents themselves. FRBP 3001 (c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____**DEFINITIONS**_____          _____**INFORMATION**_____

B 10 (Official Form 10) (12/11)

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy cases before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor may show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of the entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such a claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. §101 *et seq.*), and any applicable orders of the bankruptcy court.

# Mortgage Proof of Claim Attachment

If you file a proof of claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001 (c)(2).

**Name of debtor:** Hossein Rezaian and Afagh Mohammadreza        **Case number:** 12-31819 RKM

**Name of creditor:** JPMorgan Chase Bank, N.A.        **Last four digits** of any number you use to identify the debtor's account: 1551

**L&A Case No.** 12-29415

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in item 1 on your Proof of Claim form).

1. **Principal Due**    (1)  $77,931.54

2. **Interest Due***

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 3.91% | 07/22/2012 | 09/14/2012 | $449.65 |
| Total Interest due as of the petition date | | | $449.65 |

(2)  $449.65

3. **Total Principal and Interest Due**    (3)  $78,381.19

*Home Equity Line of Credit (HELOC) calculated using daily simple interest. Calculation of Interest Due based on per diem not per annum rates.

## Part 2: Statement of Preparation Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in item 1 on your Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. **Late Charges** | | (1) | $ .00 |
| 2. **Non-sufficient funds (NSF) fees** | | (2) | $ .00 |
| 3. **Attorney's fees** | | (3) | $ .00 |
| 4. **Filing fees and court costs** | | (4) | $ .00 |
| 5. **Advertisement costs** | | (5) | $ .00 |
| 6. **Sheriff/auctioneer fees** | | (6) | $ .00 |
| 7. **Title costs** | | (7) | $ .00 |
| 8. **Recording Fees** | | (8) | $ .00 |
| 9. **Appraisal/broker's price opinion fees** | | (9) | $ .00 |
| 10. **Property inspection fees** | | (10) | $ .00 |
| 11. **Tax advances (non-escrow)** | | (11) | $ .00 |
| 12. **Insurance advances (non-escrow)** | | (12) | $ .00 |
| 13. **Escrow shortage or deficiency** (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ .00 |

| | | |
|---|---|---|
| 14. **Property preservation expenses** | (14) | $ .00 |
| 15. Other. Specify: _____ | (15) | $ .00 |
| 16. Other. Specify: _____ | (16) | $ .00 |
| 17. Other. Specify: _____ | (17) | $ .00 |
| 18: **Total prepetition fees, expenses, and charges.** Add all of the amounts listed above | (18) | $ .00 |

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**
  ☒ No
  ☐ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent applicable non-bankruptcy law.

1. **Installment payments due**
   Date last payment received by creditor       08/08/2012
   Number of installment payments due       (1)       0

2. **Amount of installment payments due**

3. **Calculation of cure amount**

   | | |
   |---|---|
   | Total Installment payments due as of the petition date      $ .00 | (2)   $ .00 |
   | **Add** Total preparation fees, expenses, and charges | $ .00 |
   | **Subtract** total of unapplied funds (funds received but not credited to account) | ($ .00) |
   | **Subtract** amounts for which debtor is entitled to a refund | ($ .00) |
   | Total amount necessary to cure default as of the petition date | (3)   $ .00 |

***1st Post-Petition Payment Due 09/15/2012:   $258.16
                                P&I:      $258.16

B 10 (Official Form 10) (12/11)

Basis for asserting that the applicable party has the right to foreclose:

JPMorgan Chase Bank, N.A., services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is lifted/set aside, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of:

JPMorgan Chase Bank, N.A. ("Note-holder"), directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Note-holder or has been duly endorsed. WHERE REQUIRED BY APPLICABLE LAW: Note-holder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.



```
9354529
04/21/2005 11:14 AM $20.00
Book - 9120 Pg - 5875-5880
GARY W. OTT
RECORDER, SALT LAKE COUNTY, UTAH
BANK ONE
201 E MAIN ST
LEXINGTON KY 40507-2002
BY: HEH, DEPUTY - MA 6 P
```

WHEN RECORDED MAIL TO
JPMorgan Chase Bank, N.A.
Retail Loan Servicing KY2 1606
P.O. Box 11606
Lexington, KY 40576-1606

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# REVOLVING CREDIT DEED OF TRUST

**MAXIMUM LIEN** The lien of this Deed of Trust shall not exceed at any one time $80,000.00.

THIS DEED OF TRUST is dated April 1, 2005, among HOSSIEN REZAIAN and AFAGH M REZA, HUSBAND AND WIFE, AS JOINT TENANTS whose address is 14029 CANDY PULL DRIVE DRAPER, UT 84020 ("Trustor"); JPMorgan Chase Bank, N.A., whose address is Home Equity and Consumer Lending Division 1111 Polaris Parkway Columbus, OH 43240 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and JPMorgan Chase Bank, National Association, whose address is 1111 Polaris Parkway, Columbus, OH 43240 (referred to below as "Trustee").

**CONVEYANCE AND GRANT** For valuable consideration, Trustor irrevocably grants and conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary all of Trustor's right, title, and interest in and to the following described real property together with all existing or subsequently erected or affixed buildings, improvements and fixtures, all easements, rights of way and appurtenances, all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights) and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in SALT LAKE County, State of Utah:

> LAND IN SALT LAKE COUNTY, STATE OF UTAH, ALL OF LOT 309, SOUTH MOUNTAIN PHASE 1 SUBDIVISION AMENDED ACCORDING TO THE OFFICIAL PLAT THEREOF RECORDED JULY 31, 1995 IN BOOK 95-7, AT PAGE 183, IN THE OFFICE OF THE SALT LAKE COUNTY RECORDER.

The Real Property or its address is commonly known as 14029 CANDY PULL DRIVE DRAPER, UT 84020. The Real Property tax identification number is ▓▓▓▓▓.

**REVOLVING LINE OF CREDIT.** Specifically, in addition to the amounts specified in the Indebtedness definition, and without limitation, this Deed of Trust secures a revolving line of credit, which obligates Lender to make advances to Trustor so long as Trustor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Trustor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in this Deed of Trust and any intermediate balance.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF TRUSTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

> Possession and Use. Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property. The following provisions relate to the use of the Property or to other limitations on the Property. This Instrument is a Trust Deed executed in conformity with the Utah Trust Deed Act, UCA 57-1-19 et seq.

> Duty to Maintain. Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

> Compliance With Environmental Laws. Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about, or from the Property by any prior owners or occupants of the Property or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**DEED OF TRUST**
(Continued)

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and permissible fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**LENDER'S EXPENDITURES.** If Trustor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Trustor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand, (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Property also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own

choice, and Trustor will deliver or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Trustor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Trustor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to defend the action and obtain the award. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Trustor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall assemble the Personal Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Trustor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Trustor will be in default under this Deed of Trust if any of the following happen:

(A) Trustor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Trustor's income, assets, liabilities, or any other aspects of Trustor's financial condition.

(B) Trustor does not meet the repayment terms of the Credit Agreement.

(C) Trustor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Trustor's obligations under this Deed of Trust, after Trustor's failure to do so, that decision by Lender will not affect Lender's right to declare Trustor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Trustor to declare the entire Indebtedness immediately due and payable.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**DEED OF TRUST**
(Continued)

Page 4

Collect Rents. Lender shall have the right, without notice to Trustor, to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Trustor hereby waives any requirement that the receiver be impartial and disinterested as to all of the parties and agrees that employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or by law.

Notice of Sale. Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of Personal Property may be made in conjunction with any sale of the Real Property.

Sale of the Property. To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Expenses. To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of SALT LAKE County, State of Utah. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Deed of Trust or required by law, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered in accordance with the law or with this Deed of Trust, when actually received by telefacsimile (unless otherwise required by law) when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Notwithstanding any other provision of this Deed of Trust, all notices given under Utah Code Ann. Section 57-1-26 shall be given as required therein. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided by applicable law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors. It will be Trustor's responsibility to tell the others of the notice from Lender. Notwithstanding the foregoing, the address for notice for Lender is: JPMorgan Chase Bank, N.A., P.O. Box 901008, Fort Worth, TX 76101-2008

**IDENTITY OF LENDER.** Lender is JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, with its main offices located in Columbus, Ohio.

**NON-WAIVER.** A waiver by any party of a breach of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision.

**SUPPLEMENT TO PERSONAL PROPERTY DEFINITION.** It is the intention of Lender only to take a security interest in and retain a lien on that personal property considered fixtures under the Uniform Commercial Code as adopted in the jurisdiction where this Deed of Trust is filed of record as same may be amended from time to time or such other statute of such jurisdiction that defines property affixed to real estate and no other personal property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable federal or state law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. What is written in this Deed of Trust and in the Related Documents is Trustor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Governing Law. This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Utah.



**DEED OF TRUST**
(Continued)

Page 5

---

except for matters related to: (1) interest and the exportation of interest, which will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and the laws of the State of Ohio; and (2) the validity and enforcement of Lender's security interest in the Property, which will be governed by the laws of the State where the Property is located. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever of the governing state or federal laws that would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

**Joint and Several Liability.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Trustor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Trustor will not have to comply with the other provisions of this Deed of Trust. Trustor also understands that if Lender does consent to a request, that does not mean that Trustor will not have to get Lender's consent again if the situation happens again. Trustor further understands that just because Lender consents to one or more of Trustor's requests, that does not mean Lender will be required to consent to any of Trustor's future requests. Trustor waives presentment, demand for payment, protest, and notice of dishonor. Trustor waives all rights of exemption from execution or similar law in the Property and Trustor agrees that the rights of Lender in the Property under this Deed of Trust are prior to Trustor's rights while this Deed of Trust remains in effect.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Trustor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Utah as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means JPMorgan Chase Bank, N.A. and its successors and assigns.

**Borrower.** The word "Borrower" means HOSSIEN REZAIAN and AFAGH M REZA, and all other persons and entities signing the Credit Agreement.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated April 1, 2005, in the original principal amount of $80,000.00 from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Deed of Trust is April 1, 2025.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601 et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901 et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. In addition, and without limitation, the term "Indebtedness" includes all amounts identified in the Revolving Line of Credit paragraph of this Deed of Trust. However, the term "Indebtedness" is subject to the limitations identified in the Maximum Lien section of this Deed of Trust.

**Lender.** The word "Lender" means JPMorgan Chase Bank, N.A., its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means JPMorgan Chase Bank, National Association, whose address is 1111 Polaris Parkway, Columbus, OH 43240 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means HOSSIEN REZAIAN and AFAGH M REZA.

**EACH TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST AND EACH TRUSTOR AGREES TO ITS TERMS.**

TRUSTOR

X _____
HOSSIEN REZAIAN, Individually

X _____
AFAGH M REZA, Individually

**DEED OF TRUST**
(Continued)

Page 6

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __Utah__ )
) SS
COUNTY OF __Salt Lake__ )

[Notary seal: NOTARY PUBLIC, JUDI A. CROOK, 672 East 11400 South, Draper, UT 84020, My Commission Expires 01/06/2009, STATE OF UTAH]

On this day before me, the undersigned Notary Public, personally appeared HOSSIEN REZAIAN, to me known to be the individual described in and who executed the Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this __1__ day of __April__, 20__05__.

By __[signature]__ Residing at __672 E 11400 S Draper UT 84020__

Notary Public in and for the State of __Utah__  My commission expires __1/6/09__

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF __Utah__ )
) SS
COUNTY OF __Salt Lake__ )

[Notary seal: NOTARY PUBLIC, JUDI A. CROOK, 672 East 11400 South, Draper, UT 84020, My Commission Expires 01/06/2009, STATE OF UTAH]

On this day before me, the undersigned Notary Public, personally appeared AFAGH M REZA, to me known to be the individual described in and who executed the Deed of Trust, and acknowledged that he or she signed the Deed of Trust as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this __1__ day of __April__, 20__05__.

By __[signature]__ Residing at __672 E 11400 S Draper UT 84020__

Notary Public in and for the State of __Utah__  My commission expires __1/6/07__

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Credit Agreement secured by this Deed of Trust (which is delivered to you together with this Deed of Trust) and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____ Beneficiary: _____
By: _____
Its: _____

LASER PRO Lending, Ver. 5.19.40.05 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved.

# HOME EQUITY LINE OF CREDIT sm
## AGREEMENT AND DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $80,000.00 | 04-01-2005 | 04-01-2025 | | | | | |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "***" has been omitted due to text length limitations

**Borrower**  HOSSIEN REZAIAN and AFAGH M REZA
14029 CANDY PULL DRIVE
DRAPER, UT 84020

**Lender**  JPMorgan Chase Bank, N.A
Home Equity and Consumer Lending Division
1111 Polaris Parkway
Columbus, OH 43240

**CREDIT LIMIT $80,000.00**                                **DATE OF AGREEMENT April 1 2005**

**Introduction.** This HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT ("Agreement") governs your line of credit (the Credit Line" or the "Credit Line Account") issued through JPMorgan Chase Bank, N.A  In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean JPMorgan Chase Bank, N.A  You agree to the following terms and conditions

**Promise to Pay**  You promise to pay JPMorgan Chase Bank, N.A., or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line You will pay your Credit Line according to the payment terms set forth below  If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower.  Each Borrower authorizes any other Borrower on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement.  We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ( Opening Date ) and will continue until April 1 2025 ( Maturity Date )  All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below  will be due and payable upon maturity  The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of Ohio, following the expiration of the right to cancel, the perfection of the Deed of Trust, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows   ten (10) years.  The Draw Period is also referred to as the  First Payment Stream"  You may obtain credit advances during this period ("Draw Period")  After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain credit advances  The length of the repayment period is as follows  ten (10) years. The Repayment Period is also referred to as the "Second Payment Stream"  You agree that we may renew or extend the period during which you may obtain credit advances or make payments  You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** During the Draw Period your Regular Payment will be equal to the amount of the FINANCE CHARGE accrued for the billing cycle for which the statement is rendered  You will make 120 of these payments  Your payments will be due Monthly  Advances to your credit line or an increase in the ANNUAL PERCENTAGE RATE may increase your Regular Payment. If you make only the Regular Payment during your Draw Period, the principal balance outstanding on your line will not be reduced as a consequence of your payment of only the FINANCE CHARGE due.

During the Repayment Period, your Regular Payment will be based on an Amortization of your Balance at Start of Repayment Period  Your payments will be due Monthly  Your Regular Payment for the Repayment Period is calculated by us at or near the end of the Draw Period  On the day we calculate your Regular Payment, we apply the ANNUAL PERCENTAGE RATE in effect on that day to the balance on your Credit Line and determine what amount is necessary to repay your balance at the ANNUAL PERCENTAGE RATE over the Amortization Period shown below

| Range of Balances | Number of Payments | Amortization Period |
|---|---|---|
| All Balances | 120 | 120 payments |

During the Repayment Period, a change in the ANNUAL PERCENTAGE RATE can cause the balance to be repaid more quickly or more slowly When rates decrease, less interest is due, so more of the payment repays the principal balance  When rates increase  more interest is due  so less of the payment repays the principal balance.  If the ANNUAL PERCENTAGE RATE varies during the Repayment Period, however  the number of your Regular Payments will be increased or decreased to reflect the change in the ANNUAL PERCENTAGE RATE  You agree to keep making payments until the entire outstanding balance is paid in full  If your Credit Line balance falls below $100.00 during the Repayment Period, you agree to pay your balance in full

Your "Minimum Payment" will be the Regular Payment, plus any amounts past due and all other charges  In addition, we have the right to require you to pay fees and charges assessed on the Credit Line Account and in addition to the Minimum Payment  You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

Under some circumstances, the Repayment Period installment will not cover the Finance Charges and "negative amortization"  will occur Negative amortization will increase the amount you owe us and reduce your equity in your property

**How Your Payments Are Applied.**  Unless otherwise agreed or required by applicable law  payments and other credits will be applied to Finance Charges first; then to unpaid principal; then late charges and other charges.

**Receipt of Payments.**  All payments must be made by a check, automatic account debit, electronic funds transfer  money order  or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement.   Payments received at that address prior to close of business on any business day will be credited to your Credit Line as of the date received   If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt

**Credit Limit.**  This Agreement covers a revolving line of credit for the principal amount of Eighty Thousand & 00/100 Dollars ($80,000.00) which will be your "Credit Limit" under this Agreement.  During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights  You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit.  Your Credit Limit is the maximum amount you may have outstanding at any one time.  You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit.  Your Credit Limit will not be increased should you overdraw your Credit Line Account  If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you.  Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.**  We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line.  In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling  These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling  If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes  Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any  under the Credit Line  However  we have no obligation to provide any of the credit advances referred to in this paragraph

**Credit Advances.**  After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows

**Credit Line Checks**  Writing a preprinted  credit line check  that we will supply to you

**Requests in Person.**  Requesting a credit advance in person at any of our authorized locations

**Credit Card Access**  Using your  credit card  to receive cash advances or to make purchases

**ATM Access**  Using your "credit card/ATM card" at any of our designated ATM locations

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one of you telling us not to give advances to the other

**Limitations on the Use of Checks.**  We reserve the right not to honor credit line checks in the following circumstances

**Credit Limit Violation.**  Your Credit Limit has been or would be exceeded by paying the credit line check.

**Post-dated Checks**  Your credit line check is post-dated  If a post-dated credit line check is paid and as a result any other check is

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT
## (Continued)

Page 2

returned or not paid, we are not responsible for any losses or damages you incur

**Stolen Checks** Your credit line checks have been reported lost or stolen

**Unauthorized Signatures** Your credit line check is not signed by an "Authorized Signer" as defined below

**Termination or Suspension** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the credit line check.

If we pay any credit line check under these conditions, you must repay us, subject to applicable laws, for the amount of the credit line check The credit line check itself will be evidence of your debt to us together with this Agreement. Our liability, if any for wrongful dishonor of a check is limited to your actual damages Dishonor for any reason as provided in this Agreement is not wrongful dishonor We may choose not to return credit line checks along with your periodic billing statements however your use of each credit line check will be reflected on your periodic statement as a credit advance We do not "certify" credit line checks drawn on your Credit Line

**Limitations on the Use of Credit Cards** We reserve the right not to honor credit cards in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the credit card charge

**Stolen Credit Cards** Your credit cards have been reported lost or stolen

**Unauthorized Signatures** Your credit card is not used by an "Authorized Signer" as defined below

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Credit Line charge

If we pay any advance requested by use of the credit card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance The advance itself will be evidence of your debt to us together with this Agreement. Our liability if any for wrongful dishonor of an advance is limited to your actual damages Dishonor for any reason as provided in this Agreement is not wrongful dishonor Your use of the credit card will be reflected on your periodic statement as a credit advance

**Limitations on the Use of ATM Cards.** We reserve the right not to honor credit card/ATM cards in the following circumstances.

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by honoring the credit card/ATM card charge

**Stolen ATM Cards** Your credit card/ATM cards have been reported lost or stolen.

**Unauthorized Signatures.** Your credit card/ATM card is not used by an "Authorized Signer" as defined below

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we honored the Credit Line charge

If we pay any advance requested by use of the credit card/ATM card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance The advance itself will be evidence of your debt to us together with this Agreement. Our liability if any for wrongful dishonor of an advance is limited to your actual damages Dishonor for any reason as provided in this Agreement is not wrongful dishonor Your use of the credit card/ATM card will be reflected on your periodic statement as a credit advance

**Transaction Requirements** The following transaction limitations will apply to the use of your Credit Line

**Credit Card Limitations** The following transaction limitations will apply to your Credit Line and using a Credit Card

**Other Transaction Requirements**
You agree not to use your credit card to initiate a transaction involving Internet gambling, regardless of the jurisdiction in which you are located, including locations within the United States, and the Bank has the right to refuse a transaction which it reasonably believes involves Internet gambling.

The maximum limit of each transaction per day may not exceed your current available balance or $99,999.99 whichever is less For security reasons, there may be times when we further limit this amount, request authentication by the merchant or bank of your identity or decline the transaction even if you have the available funds

**ATM Access Limitations** The following transaction limitations will apply to your Credit Line and using an Automated Transaction Machine ( ATM") access card

**Other Transaction Requirements** Transactions conducted at ATMs are governed by the limitations of the individual ATM owners and may be subject to ATM fees and transaction limitations imposed by the ATM owner

**Credit Line credit line check and In Person Request Limitations** There are no transaction limitations for the writing of credit line checks or requesting an advance in person.

**Authorized Signers** The words "Authorized Signer" for credit line checks, credit cards and credit card/ATM cards as used in this Agreement mean and include each person who signs this agreement

**Stop Payments** We do not honor stop payment orders for credit line checks drawn against your Credit Line Account. You therefore should not use your Credit Line Account if you anticipate the need to stop payment. You agree that we will have no liability to you or to any other party because we do not honor stop payment orders

**Lost credit line checks, credit cards and credit card/ATM cards** If you lose your credit line checks, credit cards or credit card/ATM cards or if someone is using them without your permission, you agree to let us know immediately The fastest way to notify us is by calling us at (800) 800-5826

**Liability For Unauthorized Use.** You may be liable for the unauthorized use of your credit card access device which accesses your Credit Line You will not be liable for unauthorized use that occurs after you notify us or our designee at JPMorgan Chase Bank, N.A P.O Box 901008, Fort Worth, TX 76101 2008. orally or in writing of the loss, theft, or possible unauthorized use In any case, your liability for unauthorized use of your credit card will not exceed $50.00.

If you use an access card which debits a checking account for other consumer asset accounts) but also draws on an overdraft line of credit, Regulation E provisions apply as well as sections 226 13(d) and (g) of Regulation Z In such a transaction, you might be liable for up to $50.00 under Regulation Z Also, you might be liable for $50.00, $500.00 or an unlimited amount under Regulation E, or a lesser amount under applicable state law Please refer to your electronic fund transfers disclosure for liability limitations and error-resolution procedures for transactions covered by the federal Electronic Fund Transfers Act.

**Future Credit Line Services** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by a Revolving Credit Deed of Trust dated April 1 2005, to a trustee in favor of us on real property located in SALT LAKE County State of Utah, all the terms and conditions of which are hereby incorporated and made a part of this Agreement

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us You may obtain property insurance through any company of your choice that is reasonably satisfactory to us You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you Subject to applicable law if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity we will send you a periodic statement It will show among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due

**When FINANCE CHARGES Begin to Accrue** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the daily balance" method. To get the

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT
(Continued)

Page 3

daily balance we take the beginning balance of your Credit Line Account each day add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us the daily balance.

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we add together the periodic FINANCE CHARGES for each day in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the Prime Rate. Prime Rate means the base rate on corporate loans posted by at least 75% of the USA's largest banks known as The Wall Street Journal Prime Rate and published in The Wall Street Journal (or alternate publication if required) on each publication day of each month. If more than one rate is published as the prime rate, the Prime Rate will be the highest rate called "the Prime Rate" (the "Index"). We will use the most recent Index value available to us as of the date of any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Agreement, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your Second Payment Stream. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate during the Second Payment Stream will take the form of more payments of the same amount. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect on the first calendar day following the publication of a new Prime Rate. In no event will the corresponding ANNUAL PERCENTAGE RATE be more than the greater of 25.00000% or the maximum rate we would be allowed to charge or collect by federal law or the law of the State of Ohio (as applicable). On the day we prepared this document, the Index was 5.760% per annum, and therefore the Initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are estimated below. Your Initial Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will be based on the Index in effect on your closing date.

### Current Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.660 % | 6.410 % | 0.01756 % |

### Current Rates for the Second Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.660 % | 6.410 % | 0.01756 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds except as may be permitted during any Right of Rescission period. No matter what else may be stated in any other provision of this Agreement or in any other document you may have with us, you do not agree or intend to pay and we do not agree or intend to charge any interest or fee for the HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT which would in any way cause us to contract for charge or collect more for the Credit Line Account than the maximum we would be permitted to charge or collect by any applicable federal or Ohio state law. Any such excess interest or unauthorized fee will be applied first to reduce the unpaid principal balance of the Credit Line Account, and when the principal has been paid in full, be refunded to you.

**Conversion Option.** This Agreement contains an option to convert the interest rate from a variable rate with interest rate limits to a fixed rate as calculated below. The following information is representative of conversion features recently offered by us.

    ANNUAL PERCENTAGE RATE Increase. Your ANNUAL PERCENTAGE RATE may increase if you exercise this option to convert to a fixed rate.

    Conversion Periods. You can exercise the option to convert to a fixed rate only during the following period or periods. At any time during the Draw Period, with our written consent, any one of you may convert the repayment schedule for either the entire outstanding balance on the Credit Line Account or any portion thereof (but not less than $1,000.00) for a term not to exceed ten (10) years and at a fixed rate dependent upon the term chosen by you (a "Lock"). You may have up to five (5) Locks outstanding at any one time but may not make additional advances to any one Lock once established. The total outstanding balance on any Lock will not be subject to the Credit Advances and "Minimum Payment" section of this Agreement. Instead, when each Lock is established, we will determine the payment amount that would be required to pay off the balance in that Lock in substantially equal payments over the term of the Lock at the fixed rate applicable to that Lock. Therefore, your Minimum Payment due each month will be the sum of the fixed payment amount for each Lock plus the minimum payment amount for the balance of your Account which has not been designated as a Lock (the Credit Line ) calculated using the formula set forth in the Minimum Payment section of this agreement. Additional payments in any Lock may be made at any time but shall not affect your obligation to pay succeeding lock payments as long as any amount is still owing on the Lock. Any payment made upon your outstanding principal balance in any Lock will be available on the Credit Line for you to draw against upon posting of such payment prior to the maturity date. If your outstanding balance includes one or more Locks as well as a balance on your Credit Line, unless you properly designate otherwise on a payment coupon we provide you, then each additional payment we receive will be first applied to the Credit Line until paid in full. Also, unless you properly designate otherwise on a payment coupon we provide you, if there is no Credit Line to which to apply an additional principal payment, then the additional principal payment will be applied to the Lock first opened until paid in full.

    Upon conversion, the converted outstanding balance will accrue interest at a fixed rate as calculated in the Rate Determination section and will amortize over a specific period of time.

    Conversion Fees. You will be required to pay the following fees at the time of conversion to a fixed rate. We may charge you $50.00 for each Lock that we set up at your request.

    Rate Determination. The fixed rate will be determined as follows. We will start with the "Lock Index," which is the yield on U.S. Treasury securities having a comparable period of maturity to the scheduled maturity of the requested Lock as of the 15th day of the month immediately preceding the month in which you request your Lock. If the Lock Index becomes unavailable during the term of this Agreement, we may designate a substitute index after notice to you. We will then add 10 percentage points to the Lock Index. Your fixed lock rate (the "Fixed Lock Rate") will be the lowest of the following: the amount arrived at from the foregoing calculation, 25% or the maximum rate we are allowed to charge you at the time of your lock under federal law which for the purposes of 12 U.S.C. Section 85 incorporates Ohio law. We will then review the rates and terms available for a comparable Home Equity Loan offered by us at the time of your request based upon a like loan to value ratio, loan term and your credit profile at that time. If after that review we determine that we can offer you a lower rate than the Fixed Lock Rate, we will give you the lower rate. We will provide a complete disclosure of the terms of the Lock at the time the Lock is established.

**Negative Amortization.** Under some circumstances, your payments will not cover the finance charges that accrue and negative amortization will occur. Negative amortization will increase the amount that you owe us and reduce your equity in your home.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below.

    Annual Fee. A nonrefundable Annual Fee of $50.00 will be charged to your Credit Line at the following time: Annually during the Draw Period.

    Returned Items. You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason.

    Overlimit Charge. Your Credit Line Account may be charged $25.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a credit line check in excess of your available balance.

## HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT
(Continued)

Page 4

**Late Charges.** Your payment will be late if it is not received by us within 10 days of the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you $25.00.

**Fee to Close Account.** If you close or terminate your Credit Line Account, you may be charged the following. Your Credit Line Account may be charged Two Hundred Fifty and no/100 Dollars ($250.00) if you close or terminate your Credit Line Account within three (3) years of the Loan Date shown above. You will not be charged this fee if Lender suspends or terminates your Credit Line Account. You may prepay your Credit Line Account as noted in the Prepayment section of this Agreement without paying this fee as long as you do not close your account.

**Lien Release Fees.** In addition to all other charges, you agree, to the extent not prohibited by law, to pay all governmental fees for release of our security interests in collateral securing your Credit Line. You will pay these fees at the time the lien or liens are released. The estimated amount of these future lien release fees is $10.00.

**Other Charges.** Your Credit Line Account may be charged the following other charges.

Account Return Check Charge. We may charge you a fee for the return of a check because you are delinquent or in default in any respect concerning the Credit Line Account. The amount of this other charge is 25.00.

The charges listed in the following Security Interest Charges paragraph (if such paragraph is present) are part of the closing or settlement costs associated with your Credit Line.

**Security Interest Charges.** You agree to pay all security interest charges related to your Credit Line as set forth below:

| | |
|---|---|
| FILING FEE | $20.00 |
| Total | $20.00 |

**Lender's Rights.** Under this Agreement, we have the following rights.

Termination and Acceleration. We can terminate your Credit Line Account and subject to any notice requirement or other limitation of applicable law require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen:

(1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition.

(2) You do not meet the repayment terms of this Credit Agreement.

(3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

Suspension or Reduction. In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect.

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

Change in Terms. We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

Expenses. To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

Access Devices. If your Credit Line is suspended or terminated, you must immediately return to us all credit line checks and any other access devices. Any use of credit line checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of credit line checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all credit line checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty except we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to JPMorgan Chase Bank, N.A. P.O. Box 901008 Fort Worth, TX 76101-2008

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt-out of the applicable policy or as permitted by law. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights

**HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT**
(Continued)

Page 6

under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: JPMorgan Chase Bank, N.A. P.O. Box 901008 Fort Worth, TX 76101-2008.

**Periodic Review.** We will conduct a periodic review of your Credit Line Account, based on credit and financial information we may obtain or receive from you from time to time.

**Collection Costs.** If you are in default under the terms of this Agreement, we may take all lawful action under applicable law to collect the money you owe us. It is our intent to collect only those attorney's fees and those expenses, court and collection costs permitted by the laws of your state and the United States (including the bankruptcy laws of the United States). You agree to pay only those collection costs and attorney's fees that we actually incur and that we may lawfully collect from you. If the laws of your state will not let us collect all or some of these collection costs and attorney's fees from you, we will not do so. To the extent the laws of your state prohibit us from contracting with you to collect such fees or costs or prohibit us from including this provision in your agreement with us, this provision is severed from this Agreement, is of no force and effect and your contract will be read and interpreted without this provision except to the extent federal law may now or hereafter preempt the law of your state.

**CREDIT CARD ACCESS.** Notwithstanding anything contained in this Agreement to the contrary, credit card access may not be available in your state. If credit card access is permitted in your state and becomes available, we will so advise you and will issue a credit card to you upon your request. Any credit card issued in connection with the Home Equity Line of Credit account is NOT a debit card. The words "credit card" as used in this Agreement mean the VISA or MasterCard that may be issued to you as an access device to your Credit Line Account. VISA is a registered service mark of Visa, U.S.A., Inc. MasterCard is a registered service mark of MasterCard International Incorporated.

**FOREIGN TRANSACTIONS.** Lender will charge, and Borrower will pay in U.S. dollars for all foreign transactions at the exchange rate in effect at the time the transaction is entered to Borrower's Credit Line Account, including any special currency exchange charges.

**IDENTITY OF LENDER.** Lender is JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, with its main offices located in Columbus, Ohio.

**Check Safekeeping.** Lender will retain your cancelled Credit Line Checks and will not return them with your Credit Line Account statement. You agree that your cancelled Credit Line Checks will not be returned in your statement and that the original cancelled Credit Line Checks may be destroyed after a reasonable period of time as determined by Lender. You agree that by maintaining the original Credit Line Check or a copy thereof on your behalf, Lender has otherwise made the Credit Line Check available to you in a reasonable manner. You may request a copy of any cancelled Credit Line Check. If for any reason Lender cannot return a copy of your Credit Line Check or satisfy your needs through other means, you agree that Lender will not be liable for more than the face amount of the Credit Line Check.

**Information Sharing.** Our privacy policy, which has been provided to you, describes our information sharing practices and gives directions on how to opt out, or direct us to limit the sharing of Personal Information (as defined in the privacy policy) about you with other companies or organizations. You hereby agree that, if you choose not to exercise the opt outs described in the privacy policy, you will be deemed to have authorized us to share any Personal Information about you (including information related to any of the products or services you may have with any JPMorgan Chase & Co. affiliate) with other companies or other organizations.

**Supplement to Charges to your Credit Line.** If you do not pay the fees and charges for which you are obligated or that we may charge under the terms of this Agreement at the time you are required to pay them, we have the right, but not the obligation, to charge your Credit Line for those past due fees and charges to the extent permitted by the law governing this transaction. Any amount so charged to your Credit Line will be a credit advance, bear interest at the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE until paid, and will decrease the funds available, if any, under the Credit Line. This paragraph supplements and amends but does not replace the Charges to your Credit Line paragraph.

**Governing Law.** This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Utah, except for matters related to interest and the exportation of interest, which matters will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and laws of the State of Ohio. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," given with the application.

BORROWER:

X _____  X _____
HOSSIEN REZAIAN, Individually      AFAGH M REZA, Individually

Effective Disbursement Date: The first business day after April 5, 2005.

**HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT**

| Loan No | (Continued) | Page 6 |

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

> JPMorgan Chase Bank, N.A.
> Credit Line Billing Notices
> P.O. Box 901008
> Fort Worth, TX 76101-2008

or at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter give us the following information:

> Your name and account number
>
> The dollar amount of the suspected error
>
> Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### Special Rule for Credit Card Purchases

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

> (a) You must have made the purchase in your home state or if not within your home state within 100 miles of your current mailing address, and
>
> (b) The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement of the property or services.

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $80,000.00 | 04-01-2005 | 04-01-2025 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item
Any item above containing "****" has been omitted due to text length limitations

**Borrower:** HOSSIEN REZAIAN and AFAGH M REZA
14029 CANDY PULL DRIVE
DRAPER, UT 84020

**Lender:** JPMorgan Chase Bank, N.A
Home Equity and Consumer Lending Division
1111 Polaris Parkway
Columbus, OH 43240

THIS NOTICE OF FINAL AGREEMENT is attached to and by this reference is made a part of the Disbursement Request and Authorization, dated April 1, 2005, and executed in connection with a loan or other financial accommodations between JPMORGAN CHASE BANK, N.A and HOSSIEN REZAIAN and AFAGH M REZA

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deed of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan.

THIS NOTICE OF FINAL AGREEMENT IS EXECUTED ON THE ABOVE REFERENCED LOAN DATE.

**LENDER**

X _/s/ Judy A Fosk_

THIS NOTICE OF FINAL AGREEMENT IS EXECUTED ON APRIL 1, 2005.

**BORROWER**

X _/s/_
HOSSIEN REZAIAN, Individually

X _/s/_
AFAGH M REZA, Individually